IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | | |
|---|---|---|
| WADE B. | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| BRIGHT HEALTHCARE and DOES | § | |
| 1-10, inclusive | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

This is a case involving the denial of medically necessary residential mental health treatment. It is an action for breach of contract, breach of the common law duty of good faith and fair dealing, and violations of the Texas Insurance Code.

## PARTIES

1.   Plaintiff WADE B. is, and, at all relevant times, a resident of Tarrant County, Texas.

2.   Plaintiff WADE B. is, and, at all relevant times, the parent and legal guardian of J.B. and had legal responsibility for his care, health, and welfare.

3.   WADE B. was the individual responsible for his and J.B.'s health coverage, as that term ("responsible individual") is defined by the Department of the Treasury, Internal Revenue Service.

4.   WADE B. and his son J.B. is, and, at all relevant times, a member of the Bright Healthcare health insurance benefits plan and is referred to as "the Plan" and/or "the Policy".

5.   Defendant Bright Healthcare is a health insurance company authorized to transact and currently transacting the business of insurance in the State of Texas, including the County of Tarrant. It is a domestic or foreign corporation and may be served by serving its registered agent, CT Corporation, 701 Brazos St., Suite 720, Austin, TX 78701-2556, or at 1999 Bryan St., Suite 900, Dallas, TX 75201, or wherever it may be found.

6.     The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sue said defendants by such fictitious names. On information and belief, Plaintiffs allege that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and Plaintiff will ask leave of this court to amend this Petition to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

7.     At all times relevant, the DOE defendants, and each of them, were, subject to the discovery of new facts, the agents, and employees of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of its agent.

## Jurisdiction and Venue

8.     This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a)(1) since it is an action between citizens of two different states and the matter in controversy exceeds the sum of $75,000.

9.     Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendant maintains business activity in and are in this district.

## Facts

10.    At all relevant times, Wade B. and J.B. were participants in the Policy administered by Defendant Bright Healthcare.

11.    At all relevant times, Plaintiff performed all terms, conditions and obligations required of him under the Policy, including payment of all premiums.

12.    J.B. is Wade B.'s son.

13.    J.B. was a beneficiary of the Policy, and the Policy was in full force and effect.

14.    The Policy created a duty for Bright Healthcare to provide all medically necessary health care to Plaintiff and to J.B.

15.    The Policy provided behavioral and mental health benefits.

16.    The Policy guarantees coverage for inpatient and outpatient treatment for mental health conditions.

17.    In purchasing the Policy, Plaintiff believed and relied upon representations from Bright Healthcare that he and J.B. would be protected and covered, and that all medically necessary health care would be approved if, and when, such care was needed. Plaintiff purchased the coverage for protection from when he and his family were the most vulnerable and in need of essential medical care.

18.    This action involves claims for medically necessary residential mental health treatment for J.B. that were denied by Bright Healthcare.

19.    The Policy defines Medical Necessity as "a service, procedure or intervention which is recommended by a Physician to treat a medical condition which is known to be effective in improving health outcomes and is the most appropriate supply or level of service considering the Benefits and harms to the patient."

20.    Under the terms and conditions of the Policy, covered inpatient residential mental health treatment is defined as "Medically Necessary Mental Health Care or treatment of Serious Mental Illness or treatment of Serious Mental Illness in a Psychiatric Day Treatment Facility, a Crisis Stabilization Unit or Facility, or a Residential Treatment Center for Children and Adolescents, in lieu of hospitalization, shall be Inpatient Hospital Expense."

21.    J.B. has a long history of mental illness, self-harm, and suicidal ideation which, at only worsened and led to the point where he was a danger to himself.

22.    J.B. suffered from major depressive disorder, substance abuse, self-harming, suicidal ideation, physical aggression toward property, dysgraphia, emotional dysregulation due to his ongoing depression and anxiety.

23.    Despite ongoing treatment, and long-term therapy with psychiatrists, therapists, and school counselors, J.B.'s mental health deteriorated. He displayed increased

suicidal ideation, self-harming, deepening depression, and intense anxiety. While in high school, J.B. was regularly self-harming and struggled with substance use disorder. J.B. began avoiding school and his grades plummeted. When confronted about his academic progress, his suicidal thoughts intensified.

24.   J.B. was prescribed a variety of medications, but they had no noticeable impact.

25.   J.B. was self-harming, even at school, and as a result was dismissed from his high school.

26.   J.B.'s multiple mental health disorders severely impaired his ability to function safely and effectively in the community and previous treatments were unsuccessful.

27.   At the recommendation of his therapist, J.B. was admitted to Elevations Residential Treatment Center ("Elevations").

28.   J.B.'s treatment at Elevations was medically necessary, based upon the reasoned medical opinions of J.B.'s numerous mental health providers.

29.   Plaintiff filed claims with Bright Healthcare to cover the cost of J.B.'s mental health treatment at Elevations pursuant to the terms and conditions of the Policy.

30.   Bright Healthcare denied Plaintiff's claims.

31.   Plaintiff appealed Bright Healthcare's denial through the appeals procedure outlined in the Policy.

32.   Bright Healthcare denied Plaintiff's appeal.

33.   The Bright Healthcare reviewer who denied the appeal relied on the Milliman Care Guidelines ("MCG") Behavioral Health Care, 25th edition, Behavioral Health Level of Care Guidelines, Residential Behavioral Health Level of Care, Child or Adolescent ORG: B-902-RES criteria.

34.   MCG discharge criteria include:

"Continued residential care generally is needed until 1 or more of the following:

- Residential care is no longer necessary due to adequate patient stabilization or improvement as indicated by ALL of the following:
  - Risk status acceptable as indicated by ALL of the following:
    - Danger to self or others manageable/treatable as indicated by 1 or more of the following:
      - Absence of thoughts of suicide, homicide, or serious harm to self or to another
      - Thoughts of suicide, homicide, or serious Harm to self or to another present but manageable/treatable at available lower level of care
    - Patient and supports understand follow-up treatment and crisis plan.
    - Provider and supports are sufficiently available at lower level of care.
    - Patient, as appropriate, can participate as needed in monitoring at available lower level of care.
  - Functional status acceptable as indicated by 1 or more of the following:
    - No essential function is significantly impaired.
    - An essential function is impaired, but impairment is manageable at available lower level of care.
  - Medical needs absent or manageable/treatable at available lower level of care, as indicated by ALL of the following:
    - Adverse medication effects absent or manageable/treatable
    - Medical comorbidity absent or manageable/treatable
    - Medical complications absent or manageable/treatable (e.g., complications of eating disorder)
    - Substance-related disorder absent or manageable/treatable
  - Treatment goals for level of care met.

35. J.B.'s medical records indicate that he did not, and still does not, meet the discharge criteria found within the guidelines of the MCG.

36.   Bright Healthcare's denial rationale offered no clinical evidence supporting its assertion that J.B. met any of the above requirements.

37.   Not only was Bright Healthcare's denial unreasonable considering the obvious medical necessity for J.B.'s ongoing care at a residential treatment center, but the denial also violated the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for approving all the care for J.B. that is at issue herein.

38.   Under MHPAEA, Plans that offer behavioral health benefits are required to offer those benefits at parity with medical or surgical benefits.

39.   Elevations qualifies as an intermediate behavioral health facility under the MHPAEA akin to a skilled nursing facility.

40.   Since the Policy provides coverage for treatment of behavioral health conditions and medical conditions, the Plan administrator is obligated to administer these benefits at parity with one another.

## Breach of Contract
### (v. *BRIGHT HEALTHCARE and DOES 1 – 10*)

41.   Plaintiff incorporates the preceding factual allegations.

42.   At all relevant times, Plaintiff and J.B. were active participants in the Bright Healthcare Plan and all premiums were paid.

43.   J.B.'s treatment at Elevations was medically necessary, based upon the reasoned medical opinions of J.B.'s numerous mental health providers.

44.   The Policy created a duty for Bright Healthcare to provide all medically necessary health care to Plaintiff and to J.B. Under the Policy, to qualify for residential treatment relating to psychiatric disorder treatment and psychiatric outpatient treatments, the covered individual's symptoms or conditions must meet the criteria for Medical Necessity.

45.  J.B.'s treatment at Elevations was medically necessary.

46.  In denying the mental health claims set forth above, Defendant Bright Healthcare has breached and continue to breach the mental health insurance contract that is the subject of this litigation.

47.  As a direct and proximate result of Bright Healthcare's claim denial, Plaintiff was forced to pay substantial sums of money out-of-pocket for J.B.'s treatment at Elevations.

48.  As a direct and proximate result of Bright Healthcare's claim denial(s), Plaintiff has been damaged in an amount equal to the mental health benefits owing, plus interest, that amount increasing monthly, because of Defendants' conduct.

### Breach of Duty of Good Faith and Fair Dealing
#### (v. *BRIGHT HEALTHCARE and DOES 1 – 10*)

49.  Plaintiff incorporates the preceding factual allegations.

50.  Insurers have an affirmative common law duty of good faith and fair dealing. That means that in the handling and adjustment of a claim, the insurer is obligated to act in good faith and deal fairly with the policyholder in delivering on the promise of the policy. Golden Rule was obligated to meet this common law obligation once a claim on the Policy was made.

51.  The guiding principles of proper claims handling help to ensure the insurer meets this obligation. Claims handling personnel must be adequately trained in these principles. These principles include an obligation to promptly acknowledge the claim, timely investigate the claim, and adjust that claim in a fair, objective, and non-biased manner.

52.  Timely adjustment and investigation mean seeking information and evidence to answer questions raised that may clarify the insurer's obligation to pay or deny the claim. Traditional claims handling principles also include a responsibility to find

coverage, err in favor of the insured, resolve ambiguities and doubt in favor of the insured, and pay the claim if it meets the policy requirements for payment.

53.   An objective and thorough investigation includes inquiry into reasons to pay a claim, along with any reasons to deny the claim. The insurer must look at the positive and negative before making its claim decision. Claims decisions must be based on facts, not guesses or speculation. Artificial obstacles to payment, unreasonable interpretation of policy terms, speculation, outcome-oriented investigations, and bias should play no role in delivery on its promise. In following these principles, the insurer is positioned to deliver on the promise of the policy. It is also positioned to meet its obligation of good faith and fair dealing.

54.   Bright Healthcare failed to follow these claims handling principles. Its adjusters, on information and belief, lacked the requisite training to properly investigate and adjust this claim. They further failed to adjust this claim in a fair and equitable manner. They ignored their responsibility to find coverage or err or resolve doubts in favor of the insured and resolve ambiguities in favor of the insured. They failed to investigate and evaluate this claim objectively and fairly. They merely looked for a reason to deny, ignoring reasons to pay the claim. Bright Healthcare and its adjusters failed to acknowledge J.B.'s medically necessary care and instead denied this claim solely on guesswork and speculation.

55.   Throughout this claim, Bright Healthcare failed to acknowledge in its communications with Plaintiff that the MCG Guideline it used to adjudicate his claim was fatally defective. Instead, Bright Healthcare presumably began and ended its investigation and adjustment of this claim with the MCG Guideline and other similarly archaic and defective processes. In doing so, it sought to find support for its conclusion that J.B.'s treatment was not medically necessary. This was the sole focus of any investigation Bright Healthcare undertook. It was an outcome-oriented focus seeking to find a reason for denial.

56. From the moment Bright Healthcare received Plaintiff's appeal, it knew or should have known that its conclusion that J.B.'s treatment was not medically necessary was wrong. It failed to conduct any investigation at all to support the basis of its denial. Its liability was thus reasonably clear.

57. Bright Healthcare also engaged, and continues to engage, in the following conduct to further its own economic interest and in violation of its contractual and fiduciary obligations to Plaintiff, including but not limited to:

> (a) Unreasonably denying the benefits of the Policy;
>
> (b) Misrepresenting pertinent Policy provisions and coverages at issue;
>
> (c) Misrepresenting medical evidence;
>
> (d) Misrepresenting and/or disregarding the opinions of treating physicians and therapists;
>
> (e) Denying benefits based on insufficient, inadequate, and biased medical analyses;
>
> (f) Repeated denials and requirements for appeals;
>
> (g) Failing to place the financial interests of its insureds on an equal par with Bright Healthcare's own financial interests;
>
> (h) Failing to objectively evaluate Plaintiff's claims and attempting to find reasons not to pay the claims;
>
> (i) Failing to conduct a full and fair investigation;
>
> (j) Conducting a medical analysis of the claim by medical personnel who sought to provide a pretext for denying Plaintiff's claim(s), instead of looking for reasons to pay the claim(s) and instead of crediting the wealth of medical information establishing medical necessity, as defined under the terms and conditions of the Policy;

(k)  Failing to consider the requirements of the Mental Health Parity and Additions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for overturning Bright Healthcare's claim denial(s) at issue herein;

(l)  Shifting the burden of investigation onto its insureds;

(m)  Engaging in an unlawful pattern of practice for denying medically necessary residential treatment to save money and increase profits; and

(n)  Failing to timely respond to appeals.

58.  In doing the acts listed above, Bright Healthcare breached the covenant of good faith and fair dealing and engaged in unfair claim settlement practices.

59.  Bright Healthcare continues to engage in these acts and said conduct and bad faith constitutes a continuing tort and bad faith to Plaintiff, causing continued damage beyond the date of the filing of this action.

60.  As a direct and proximate result of the conduct of Bright Healthcare, Plaintiff has been damaged in an amount to be determined at trial.

61.  J.B.'s parents did what few parents have to do: admit that their son needed professional help to treat his mental illness. Plaintiff bought the Policy to give them, and J.B., peace of mind if he needed medical treatment. Bright Healthcare took away that peace of mind. J.B. and his parents relied on Bright Healthcare to investigate and adjust their claim in good faith honestly, objectively, and fairly. That reliance has been to their detriment. Bright Healthcare's breach of its common law duty of good faith and fair dealing instead caused Plaintiff and J.B. to suffer considerable emotional distress and mental anguish, including, but not limited to, fear, aggravation, depression, humiliation, and anxiety.

## Violations of the Texas Insurance Code

### (v. *BRIGHT HEALTHCARE and DOES 1 – 10*)

62.  Plaintiff incorporates the preceding factual allegations.

63.     The Texas Insurance Code prohibits, among other things, certain activity by an insurer in the handling and adjustment of claims for policy benefits. Its focus is on the insurers claims handling conduct. Bright Healthcare, in its handling and adjustment of Anna's claim, has engaged in just such prohibited unfair insurance claims practices in violation of Chapters 541 and 542 of the Texas Insurance Code. These unfair practices have also been committed knowingly. Bright Healthcare has committed, *inter alia*, the following unfair claims settlement practices:

   i.   Misrepresenting to Plaintiff material facts or policy provisions relating to the coverage at issue;

   ii.  Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim when its liability was reasonably clear;

   iii. Failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for its denial of a claim or offer of a compromise settlement of a claim;

   iv.  Refusing to pay a claim without conducting a reasonable investigation of the claim;

   v.   Knowingly misrepresenting to Plaintiff pertinent facts or policy provisions relating to coverage at issue;

   vi.  Failing to acknowledge with reasonable promptness pertinent communications relating to the claim arising under the policy;

   vii. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, and failing to state those material facts necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and

   viii. Bright Healthcare engaged in this conduct knowingly with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices.

64.     These provisions of the Insurance Code are intended to protect insurance consumers from misleading or false statements about the policy or claim or compel the insurer to disclose material facts to avoid misleading the consumer. They are

also intended to compel the insurer to promptly resolve claims when liability is reasonably clear. Bright Healthcare violated these provisions of the Insurance Code.

65. Bright Healthcare claimed in the denial letter that J.B.'s residential treatment was not medically necessary. These statements, among others, were misleading and were material to whether the claim was excluded. The statements were intended to mislead and did mislead Plaintiff to a false conclusion about the Policy coverage.

66. During his treatment, J.B. needed professional help. He and his parents relied on Bright Healthcare to provide protection and look out for his best interests. Bright Healthcare failed them in several ways.

67. First, Bright Healthcare relied on unqualified medical reviewers to determine that J.B.'s treatment was not medically necessary.

68. Bright Healthcare is accredited by the National Committee for Quality Assurance (NCQA). Health plan accreditation indicates that an insurer is committed to a high level of appeal review accuracy and accountability. Among other things, NCQA Guidelines require that Bright Healthcare uses medical reviewers who are (1) in the same profession and in a similar specialty as typically manages the medical condition, procedure, or treatment as mutually deemed appropriate, (2) are neither the individual who made the original non-certification, nor the subordinate of such an individual, and (3) board certified.

69. However, Bright Healthcare did not use medical reviewers in the same profession and in a similar specialty as typically manages the medical condition, procedure, or treatment as mutually deemed appropriate.

70.     Second, Bright Healthcare used old and now unlawful criteria to impose acute severity of illness requirements on subacute or intermediate behavioral health treatment.  Bright Healthcare knows that the MCG Guideline is defective. The criteria enumerated therein are applicable to acute, involuntary psychiatric hospitalization – not to voluntary, sub-acute residential mental health treatment. Additionally, in 2017, the editor of the MCG Guideline authored a white paper, "Mental Health Parity: Where We Have Come From? Where Are We Now," that highlighted MCG Health's fundamental misconception of the purpose of intermediate levels of behavioral health care, which include residential treatment. The MCG Health white paper, which was not distributed by Bright Healthcare to any of its insureds, improperly contends that, rather than improve functional status in people with impairments that are not acute, intermediate behavioral health services are merely intended to avert hospitalization or stabilize acute crises.

71.     Bright Healthcare represented to Plaintiff that residential treatment was a covered benefit. However, it systematically applied involuntary psychiatric hospitalization criteria to deny access to voluntary, sub-acute residential treatment.

72.     Bright Healthcare also represented to Plaintiff that it administered intermediate mental health benefits in parity. It actually applied acute care standards to residential treatment but did not extend those standards to intermediate medical benefits.

73.     Any claim by Bright Healthcare that it received no information to support the claim would be untrue. Plaintiff provided Bright Healthcare all the information available. Even if Bright Healthcare believed it had no information to support J.B.'s claim, as

a part of its duty to investigate and perform a reasonable investigation, it was obligated to inform its policyholder what specific information it needed to perfect their claim. It failed to do so. Any investigation Bright Healthcare undertook cannot be reasonable or thorough without at least asking Plaintiff for any information they might have to support their claim.

74.    At no time before this suit was filed did Bright Healthcare make any attempt, in good faith or otherwise, to settle the claim. Though it received the appeal, which clearly and unequivocally stated the facts in support of coverage of the claim, Bright Healthcare chose to ignore the demand entirely. It chose to ignore the facts. It chose to ignore its use of fatally defective guidelines and the equitable bases for coverage. Instead, it blamed Elevations for failing to submit claims correctly. At all relevant times, Bright Healthcare's liability was reasonably clear. Failing to try to promptly, fairly, and equitably settle this claim further violated the Insurance Code.

75.    At all material times, Bright Healthcare's conduct in this regard was intentional. It knowingly engaged in this conduct. It knew it had no factual basis upon which to deny the claims. Instead, it intentionally chose to ignore the factual and legal evidence provided by Plaintiff. It chose to remain silent, take no action, perform no investigation, and hope that Plaintiff and J.B. would simply go away.

76.    This conduct, along with Bright Healthcare's other acts and omissions, violated Texas Insurance Code §§541.001, et seq., 542.001, et seq., including the Insurance Code's provision for the prompt payment of claims, §542.051, et seq.

**Knowing Conduct**

77. The conduct complained of in this action was engaged in knowingly, as that term is defined in Ch. 17 of the Texas Business and Commerce Code and Tex. Ins. Code §541.001(1). Bright Healthcare knew what it was doing. It knew its claims handling conduct violated provisions of the Texas Insurance Code. It knew of the false, misleading, and deceptive nature of its conduct in handling this claim. It chose to act in this manner anyway.

**Damages**

78. The acts, omission, and practices of Bright Healthcare constituting a tort were the proximate cause of the damages sustained by Plaintiff. All of Bright Healthcare's acts and practices in violation of the various statutes herein recited were the producing cause of the actual damages suffered by Plaintiff, including, but not limited to, damages for mental anguish and emotional distress, as well as actual damages under the insurance contract. For all of these wrongful acts, omissions, and practices, Plaintiff is entitled to money damages as may be found by the jury.

79. The acts, omissions, and practices of Bright Healthcare constituting a tort herein warrant the imposition of 18% interest per annum pursuant to Tex. Ins. Code §542.060, *et seq*.

80. Bright Healthcare's actions in handling of Plaintiff's claim were done knowingly and intentionally or with a conscious or callous disregard for Plaintiff's rights and welfare. As such, its actions reflected gross negligence and were so outrageous as to warrant the imposition of punitive or exemplary damages, for which Plaintiff further sues for recovery. Plaintiff seeks such punitive or exemplary damages as may be assessed by the jury in its discretion.

81. Plaintiff also requests, in addition to the benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Tex. Ins. Code §542.060, or on principles of equity.

82. The Policy does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Tex. Ins. Code §542.060, Tex. Fin. Code §302.002, or any other applicable Texas law.

### Request for Attorneys' Fees

83. This suit was made necessary by Bright Healthcare's wrongful acts and practices. Plaintiff has been forced to retain attorneys to prosecute his claims, for which he has agreed to pay a reasonable attorneys' fee. In this regard, he is entitled to recover his reasonable attorneys' fees and expenses incurred and to be incurred in this action for the full prosecution of this claim through trial and appeal, if any, that are reasonable and necessary for him to obtain the relief he seeks. Accordingly, Plaintiff further seeks recovery of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this action pursuant to pursuant to Texas Civil Practice and Remedies Code §38.001, *et. seq*.,  Ch. 541 and 542 of the Texas Insurance Code, Tex. Business and Commerce Code §17.49 *et seq*., and any other applicable Texas law.

### General Claims

84. All notices required to be given have been given, and all conditions precedent have been satisfied.

### Demand for Jury Trial

85. Plaintiff demands a jury trial.

### Prayer

Plaintiff prays that the Court grant the following relief against all Defendants:

1. General damages for the failure to provide the promised benefits under the subject contract of insurance in a sum to be determined at the time of trial, and a return of the payments which Plaintiff paid to Elevations;

2. General damages for mental and emotional distress and other incidental damages in a sum to be determined at trial;

3. Punitive and exemplary damages;

4. Treble damages as allowed under Tex. Ins. Code § 541.152;

5. Special damages in an amount according to proof;

6. For costs of suit herein incurred;

7. For reasonable attorneys' fees; and

8. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: _____/s/ Amar Raval_____
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com


**DL LAW GROUP**

By: _/s/ David Lilienstein b/p ARaval_
David M. Lilienstein, SBN 218923*
david@dllawgroup.com
Katie J. Spielman, SBN 252209*
katie@dllawgroup.com

**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

ATTORNEYS FOR PLAINTIFF

*Pro hac vice* application to be submitted